UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

ANSIL WILLIAMS,                                 :

              Plaintiff,                    :     **REPORT and RECOMMENDATION**

              -against-                     :     02 Civ. 5305 (LTS)(KNF)

COHEN BROTHERS REALTY CORP.,      :

              Defendant.                    :

--------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LAURA T. SWAIN, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Ansil Williams ("Williams") brought this action pursuant to Title VII of the Civil Rights

Act of 1964, based upon his contention that he was dismissed from his position with the

defendant because of his race and national origin.[1] Specifically, Williams, who is black, alleges

that his relationship with a white female coworker was the reason for the termination of his

employment with the defendant. Williams also maintains that his employment was terminated in

---

[1] The defendant contends that, based on certain statements Williams made during
the course of his deposition, Williams is also alleging that he was subjected to a hostile
environment and, therefore, should obtain relief in this action based upon that allegation
as well. However, Williams did not present a claim of hostile work environment to the
Equal Employment Opportunity Commission ("EEOC") in the charge of discrimination
that he lodged with that agency. Therefore, he has not exhausted available administrative
remedies with respect to that claim, as he is required to do as a precondition to bringing
an action grounded, in part, on such an allegation. Since it is unlikely that the EEOC
would have broadened its investigation based upon Williams' claims of race discrimina-
tion and retaliation to encompass a claim of hostile work environment, that claim is not
properly before the Court and will not be analyzed in this writing. See Holtz v.
Rockefeller, Inc., 258 F.3d 62, 82-83 (2d Cir. 2001).

retaliation for his exposing certain business practices engaged in by a managerial employee of the defendant, that Williams alleges were inappropriate.

Before the Court is a motion by the defendant for summary judgment made pursuant to Fed. R. Civ. P. 56. The defendant contends that, based upon the evidence adduced during the pretrial discovery phase of the litigation, the plaintiff: (a) cannot establish a *prima facie* case of racial discrimination; (b) is not alleging that his national origin played any role in the determination made by the defendant to sever its ties with him; and (c) concedes that the retaliation about which he complains in this action is not premised upon the plaintiff's involvement in any protected activity. Consequently, the defendant has asserted that summary judgment in its favor is warranted. Williams has not responded to the defendant's motion for summary judgment.

## II. BACKGROUND

In 1997, Charles Steven Cohen ("Cohen"), president and chief executive officer of the defendant Cohen Brothers Realty Corporation ("CBRC"), offered Williams an opportunity to work at CBRC as his driver and as "an assistant in [CBRC's] management department primarily in security services." Williams accepted the offer and, on September 3, 1997, the parties entered into a written employment agreement. During his tenure with CBRC, Williams held the title director of security.

Under the terms of the parties' employment agreement, either Williams or CBRC could terminate their employment relationship "at any time, with or without cause or notice." The parties also agreed that Williams would "perform all duties that are assigned to [him] by [CBRC]." Williams acknowledged, in that agreement, that his position with CBRC could change and that his duties "may be increased, decreased, or otherwise modified at any time in the

-2-

sole discretion of [CBRC]." It was further agreed that Williams would devote his "full time, attention, and energy to the performance of [his] duties and use best efforts in furtherance of the interests and business of [CBRC]." The record before the Court establishes that Williams' responsibilities included monitoring and managing the work performed by companies with whom CBRC had contracted for security services at various properties it manages in the city of New York.

By October 1998, Jim Jones ("Jones"), CBRC's senior vice president and director of management, had determined that Williams was not performing his assigned duties satisfactorily. Therefore, Jones began to prepare and submit to Williams memoranda outlining specific tasks that he wanted Williams to perform at dedicated hours. He also directed Williams to report to him directly or, on occasion, to Jones' assistant, so that Jones would be kept apprised of Williams' activities and would be assured that specific security-related tasks had been performed by Williams throughout the workweek and on weekends at CBRC managed properties.

By May 1999, Williams had taken umbrage at Jones' memoranda. Williams was particularly aggrieved by a memorandum dated May 3, 1999, that Jones sent to him concerning the failure of a security camera's videotape to capture activities in the lobby at one of the CBRC-managed facilities. CBRC had determined that the camera's videotape had not been changed, as it should have been, according to Jones, if Williams had been performing his assigned tasks appropriately. Williams informed Jones that he found Jones' May 3, 1999 memorandum "an insult to my intelligence." Williams explained to Jones that he "didn't come here [to CBRC] to be a Security Guard, I came here with my experience as a Security Manager and to be treated by you as a Security Guard is absolutely insulting."

-3-

Jones continued to find fault with Williams' job performance throughout the balance of 1999. Jones continued to issue memoranda to Williams concerning his job performance until April 2000. On May 15, 2000, Cohen, who had hired Williams, advised Williams in writing that, effective 8:30 a.m. on that date, his employment with CBRC was terminated. Thereafter, on November 9, 2000, Williams filed his charge of discrimination with the EEOC. He alleged, as noted above, that he had been discriminated against based upon his race and national origin and, further, that he had been the victim of retaliation. Williams alleged, in his EEOC charge of discrimination, that the termination of his employment with CBRC was a direct result of his relationship with a white female employee of CBRC, whose employment, like Williams', was terminated on May 15, 2000.

### III. DISCUSSION

*Standard of Review for Summary Judgment*

Summary judgment may be granted in favor of the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998). When considering a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." L. B. Foster Co. v. America Piles, Inc., 138 F.3d 81, 87 (2d Cir. 1998) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 [1986]).

The moving party bears the burden of showing that no genuine issue of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986). The moving party's "burden will be satisfied if [it] can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995). Once the moving party has satisfied its burden, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986).

In order to defeat a motion for summary judgment, the non-moving party cannot merely rely upon the allegations contained in the pleadings that raise no more than "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S. Ct. at 1355. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48, 106 S. Ct. at 2510. The non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Id. at 256, 2514. Summary judgment should be granted only if no rational jury could find in favor of the non-moving party. See Heilweil v. Mount Sinai Hospital, 32 F.3d 718, 721 (2d Cir. 1994).

*Title VII*

*A.      Race Discrimination*

Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

-5-

individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Claims of discrimination brought under Title VII are analyzed in accordance with the three-part evidentiary framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). Under that framework, the plaintiff must present a *prima facie* case of discrimination. If the plaintiff meets this burden, a presumption of unlawful discrimination arises and the burden shifts to the defendant, who must adduce evidence that an adverse employment action was taken for a legitimate, nondiscriminatory reason. This burden is merely one of production, not persuasion. If the defendant states a legitimate, nondiscriminatory reason, the presumption of discrimination falls out of the case and the plaintiff must prove, by a preponderance of the evidence, that the reason offered by the defendant was merely a pretext for discrimination. To do so, the plaintiff must show that the stated reason was false and that discrimination was the real reason for the employer's action. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508-520, 113 S. Ct. 2742, 2747-54 (1993); Cagle v. Unisys Corp., No. 99 Civ. 9575, 2003 WL 21939705, at *4 (S.D.N.Y. Aug. 13, 2003).

In order to establish a *prima facie* case of discriminatory employment termination premised upon a claim of racial discrimination, a Title VII plaintiff, such as Williams, must show that: (i) he was a member of a protected class; (ii) he was qualified for the position that he held with his employer; (iii) he suffered an adverse employment action and (iv) the circumstances surrounding that adverse employment action give rise to an inference of discrimination. See Collins v. New York City Transit Authority, 305 F.3d 113, 118 (2d Cir. 2002). In the context of an employment discrimination case, the burden placed upon a Title VII plaintiff to establish a *prima facie* case is "minimal." McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001).

In the case at bar, the following is undisputed: (1) Williams is a member of a protected class; (2) he was qualified for the position he held with his former employer; and (3) he suffered an adverse employment action, in that he was dismissed from the position he held with his former employer. With respect to the fourth element that must be established by Williams in order to demonstrate that a *prima facie* case of racial discrimination exists, that the termination of his employment gives rise to an inference of discrimination on a basis forbidden by Title VII, Williams has not offered any competent evidence to the Court, as he is required to do to sustain his burden, because he failed to respond in any way to the defendant's motion for summary judgment. As a consequence, the Court finds that Williams has not met the burden placed upon him of establishing a *prima facie* case of racial discrimination. Hence, no presumption of unlawful discrimination arises in this case and the defendant is not obligated under the McDonnell Douglas rubric to adduce evidence that an adverse employment action was taken against Williams for a legitimate nondiscriminatory reason. Therefore, summary judgment in favor of the defendant on Williams' claim of race discrimination is warranted.

*B.     Retaliation*

To establish a *prima facie* case of retaliation in a Title VII action, a plaintiff must show four things: (1) that he was engaged in protected activity by opposing a practice made unlawful by Title VII; (2) that his employer was aware of that activity; (3) that he suffered an adverse employment action; and (4) that a causal connection between the protected activity and the adverse action existed. See Holtz v. Rockefeller & Co., Inc., 258 F.3d at 79. In the case at bar, the plaintiff's claim of retaliation is premised upon his allegation that information he uncovered regarding improper business practices by Jones contributed to the termination of his employment.

-7-

The plaintiff does not allege that he suffered an adverse employment action as a consequence of being engaged in protected activity. As a result, the Court finds that Williams has not presented any evidence establishing a *prima facie* case of retaliation, as contemplated in the context of an employment discrimination action brought pursuant to Title VII. As a consequence, the defendant is entitled to summary judgment on Williams' claim of retaliation.

*National Origin*

In order to establish a *prima facie* case of discrimination based on national origin, a Title VII plaintiff must establish that: (1) he belongs to a protected class; (2) that he was performing his duties satisfactorily; (3) that he was discharged; and (4) his discharge occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in that class. See Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994). The record evidence before the Court establishes that Williams does not contend that he suffered an adverse employment action as a result of his national origin. Rather, he has explained, through his deposition testimony, that he selected national origin as a ground upon which to bring this employment discrimination action because he misunderstood the inquires on a preprinted form, that he prepared as a *pro se* litigant, to be soliciting information concerning his national origin. He did not understand that by checking a box on the form regarding national origin and by indicating his national origin on the form, he was signaling to the court that a ground independent of race and retaliation existed upon which he was claiming that the termination of his employment with his former employer was discriminatory. In any event, Williams has not presented any competent evidence to the Court from which it could be concluded that the termination of Williams' employment with CBRC occurred in circumstances that give rise to an inference of

-8-

discrimination based upon Williams' national origin. Furthermore, the record contains uncontested evidence that Williams was not performing his duties satisfactorily. Therefore, two elements that Williams would have to establish to make out a *prima facie* case of national origin discrimination have not been established by him. Accordingly, summary judgment for the defendant on this branch of Williams' Title VII claim is appropriate.

## IV. RECOMMENDATION

For the reasons set forth above, the defendant's motion for summary judgment should be granted.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Laura T. Swain, 40 Pearl Street, Room 1205, New York, New York, 10007, and to the chambers of the undersigned, 40 Foley Square, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Swain. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298,

300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v.

Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
     March 21, 2006

Respectfully submitted,

_Kevin Nathaniel Fox_

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Mailed copies to:

Ansil Williams
Eric B. Sigda. Esq.

-10-